UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

| | |
|---|---|
| CHIWANA CRANDELL, | Case No. 17 -CV-0755 |
| Claimant, | Jury Trial Demanded |
| -against- | SECOND AMENDED COMPLAINT |
| KEVIN ROSS, AND GARY COOPER NEW YORKS STATE DEPARTMENT OF CORRECTIONS AND COMMUNITY SUPERVISION NEW YORK STATE, ANTHONY J. ANNUCI, ACTING COMMISSIONER, SHERYL ZEN ZEN, SUPERINTENDENT AT ALBION CORRECTIONAL FACILITY, DUANE ARTUS AND LEIGH COLLINS, JOHN DOES 1-10 INCLUSIVE. | (BKS/CFH) |
| Defendants. | |

_____

Plaintiff, Chiwana Crandell, by her undersigned counsel, based on personal knowledge and upon information and belief, allege as and for her Complaint as follows:

## JURISDICTION AND VENUE

1. This Court has jurisdiction under 28 USC 1331 and 1343(a) and under the laws of the Constitution of the United States for violation of due process under the 14th Amendment to the Constitution of The United States; for violation of the Eight Amendment to the Constitution of the United States for cruel and unusual punishment and violation of her civil rights under 42 U.S.C. § 1983 arising from

1

her sexual harassment and victimization by male staff personnel while a prisoner in Albion Women's Correctional Facility (hereinafter"Albion") during 2015 which was consistent with an acknowledged and fostered culture of recurrent sexual victimization of inmates by prison staff.

2. Venue is proper under 28 USC 1391.

## PARTIES

3. At all time mentioned herein, the Plaintiff, Chiwana Crandell is an individual presently residing in the City, State and County of New York.

4. At all times mentioned herein and upon information and belief, Defendant Gary Cooper (hereinafter, Cooper) is an individual residing in New York State and was employed as a civilian non uniformed employee at the New York State Albion Women's Correctional Facility in New York and is sued herein in his individual capacity.

5. At all times mentioned herein and upon information and belief, Defendant Kevin Ross (hereinafter, Ross) is an individual residing in New York State who was employed as a uniformed corrections officer at the New York State Albion Women's Correctional Facility and is sued herein in his individual capacity.

6. At all times mentioned herein and upon information and belief, Defendant Zen Zen (hereinafter, Zen Zen) was the superintendant the Albion Women's prison located in Albion New York (hereinafter 'Albion") responsible to oversee and direct jail operations including but not limited to supervising personnel, inmates,

security, safety, health services and prison transfer and is sued in her individual capacity.

7. At all times mentioned herein and upon information and belief, New York State Department Of Corrections And Community Supervision (DOCCS) is a division or department of the state of New York responsible for the care, custody and treatment of inmates in the state prison system with its principal office located in Albany, New York.

8. At all times mentioned herein and upon information and belief, Defendant Anthony J. Annuci, (hereinafter, Annuci) is the acting superintendant of DOCCS and is sued herein in his individual capacity. He is responsible for the care, custody, and control of all inmates housed in DOCCS facilities. He is the chief executive officer of DOCCS, and is responsible, consistent with the legal mandates governing DOCCS, for the management and control of all state prisons, and for all matters relating to the placement, supervision, promotion, and discipline of the uniformed staff of the prisons where women prisoners are confined. He is responsible, along with other Defendants, for the system of complaint, investigations, and discipline of staff misconduct, including sexual harassment and abuse, and for setting the standards by which such complaints are reviewed to determine the actions, if any, to be taken against staff. He is responsible for the policies and practices that have resulted in the deprivation of Plaintiffs' rights under federal law, and he has railed to take necessary and appropriate actions to prevent such deprivations. He is sued herein in his individual capacity .

9. At all times mentioned herein and upon information and belief, Defendant Duane Artus, (hereinafter, Artus) is a Deputy of Administration at Albion and is sued herein in his individual capacity.

10. At all times mentioned herein and upon information and belief, Defendant Leigh Collins, (hereinafter, Collins) is a ranking corrections officer at Albion and is sued herein in her individual capacity.

11. At all times mentioned herein and upon information and belief, Defendants ZenZen and Annuci have had notice of the substantial risk of sexual abuse and harassment that women prisoners face in DOCCS custody and at Albion by correctional staff New York State women's prisons through data, statistics and reports about the risks women prisoners face nationwide and, more specifically, at Albion where the Plaintiff was an inmate.

12. At all times mentioned herein and upon information and belief, despite knowing the substantial risk of serious harm from the persistent sexual abuse and harassment occurring under their policies and practices, Defendants ZenZen and Annuci have failed to take the reasonable steps necessary to reduce the substantial risk of sexual abuse experienced by women under their custody and control. Defendants have instead relied on a "zero tolerance" policy in name only, lacking

4

the necessary implementation and enforcement of policies and procedures governing supervision, investigation and discipline of staff that would actually deter and punish staff misconduct. This approach has created a prison culture that is, despite the purported "zero tolerance" position of the Department, functionally indifferent to the risk of sexual harassment and abuse for women prisoners, allowing staff sexual abuse and harassment to persist and flourish.

13. At all times mentioned herein and upon information and belief, Defendants Zenzen and Annuci perpetuated the sexual harassment and abuse of women prisoners including the Plaintiff by fostering a deliberate indifference to the creation of a culture in which even if such abuse is reported, correction officers are so unlikely to be disciplined for misbehavior that they freely disregard policies governing such behavior despite the fact that state law and prison policy make clear that women in custody are deemed unable to consent to any physical relations with staff. The prevalence of purportedly "consensual" sexual activity between staff and prisoners going unpunished sends the message that some level of staff sexual contact with inmates is expected and not worth addressing.

14. At all times mentioned herein, Defendants John Doe 1-10 inclusive are individuals whose identities are currently unknown to the Plaintiff but are named

in an individual capacity for having conspired, aided or abetted the establishment or perpetuation of policies creating a culture of abuse as aforesaid and or committed acts of misfeasance or malfeasance and or demonstrated a deliberate indifference to the abuse, deprivations, assaults and harassment suffered by the Plaintiff including but not limited to sexual assault, loss of work assignments, the deprivation of urgent medical care and the avoidance of a grievance hearing by having the Plaintiff transferred to another prison facility.

## NATURE OF THE ACTION

15. This action seeks damages for violation of the Plaintiff's civil rights including the personal and psychological injuries sustained by the Plaintiff as alleged herein.

16. At all times mentioned herein and upon information and belief, between 2011 and August 2015, the Plaintiff was an inmate at the New York State Albion Women's Correctional Facility located in Albion, New York. In a depraved and unlawful scenario, beginning in or about March 2015, the Plaintiff was blackmailed, harassed, and terrorized into engaging into sex acts with Cooper and Ross. Additionally, she was threatened that her early release would be sabotaged or revoked and retaliated against for finally refusing to engage in sex acts. The retaliation included her losing her coveted prison work assignment, refusal of urgent medical care, unlawful and unauthorized dissemination of her medical records, being threatened with charges of false disciplinary infractions and being transferred to another facility the day before her grievance/medical complaint hearing could be held.

17. During March through July, 2015, Plaintiff was repeatedly sexually harassed, raped and assaulted by defendants Ross and Cooper.

18. At all times mentioned herein, Plaintiff was raped by defendant Cooper.

19. At all times mentioned herein, Plaintiff was compelled to perform oral sex on Ross.

20. During 2015, Plaintiff reported the rape and abuse to Artus and Collins. However, they both responded with threats and intimidation of their own. Instead of reporting the abuse to administrators at Albion, Artus warned the Plaintiff that she was putting her early release in jeopardy by complaining. Instead of reporting the abuse to administrators at Albion, Collins then began to chant "SHU" to intimidate the Plaintiff by referring to special housing unit as a disciplinary measure for even mentioning what happened to her.

21. At all times mentioned herein and upon information and belief, Ross and Cooper and corrections officers and or employees at Albion exploited the authority of their positions under color of law to rape and sexually abuse the women in their custody. This manipulation and abuse is possible because the administration of Albion Correctional Facility and The DOCC have enabled a culture of complacency toward the recurrent sexual victimization, harassment and abuse of female inmates at Albion.

22. At all times mentioned herein, the Plaintiff would be forced to go to the J1

laundry room with Ross to secluded areas that were not equipped with surveillance cameras.

23. At all times mentioned herein, the Plaintiff would be forced to go to the C Basement or Mezz hall area with Cooper to secluded areas that were not equipped with surveillance cameras.

24. At all times mentioned herein and upon information and belief, during 2015, the Plaintiff was assigned to a prison job where Ross and Cooper worked and supervised the inmate workers including Plaintiff. Accordingly, both Ross and Cooper were in positions of overwhelming authority over Plaintiff.

25. During the winter of 2015, Plaintiff was advised that a hearing before a Time Allowance Committee Board (TAC Board) to determine her eligibility for an early release in September 2015, as opposed to September, 2016 would likely be held in May, 2015. However, no firm date was set for it. At stake was another year of incarceration.

26. At all pertinent times, Cooper and Ross were connected veterans of Albion and knew of the Plaintiff's TAC review and its import. They told the Plaintiff they had pull with the Board and administration at Albion so that they would see to it that she would receive early release in exchange for sex. Both of them told her that unless she went along and kept quiet about it that they would sabotage her hearing so that she would lose early release in 2015. Additionally, they told her that even if she received a favorable determination from the TAC Board that they would see to it that the early release would be revoked if she ever reported or otherwise

complained about it.

27. At the end of June, 2015, Plaintiff received a letter from the TAC Board telling her that the year of early release would be permitted. Shortly after receiving the approval, Cooper caused the Plaintiff to be fired from her prison job when she finally refused to have sex with him again.

28. At all times mentioned herein, despite the threats by Cooper and Ross, in August 2015, the Plaintiff reported the assaults to prison officials Artus and Collins who intimidated and threatened her with retaliation and told her it was best for her if she did not complain about it.

29. At all times mentioned herein, beginning in May, 2015, following her having been raped, the Plaintiff made repeated requests to see a gynecologist as she was not feeling well. She was continually denied such an examination until she was compelled to file a written grievance. A grievance hearing date was scheduled for on or about August 25, 2015.

30. The Plaintiff was eventually examined by a gynecologist in August, 2015 and was diagnosed with having contracted Chlamydia.

31. At all times mentioned herein, however, the prison contacted Plaintiff about the grievance she filed, it was discovered that her medical records and or information there from had been unlawfully circulated in the prison including the humiliating diagnosis of chlamydia. This publication is a stunning violation of her privacy and HIPPA rights and part of the campaign of intimidation and retaliation against her. Plaintiff filed a grievance complaint regarding this

publication and waited for a hearing date. A grievance hearing date was scheduled for on or about August 25, 2015

32. The day before the hearing on her medical complaint was scheduled to be heard, the Plaintiff was abruptly and summarily transferred to Bedford Hills Correctional Facility where she remained until her release from prison on September 3, 2015. Because of the transfer, she never attended any hearing on her medical complaint and was prevented from providing testimony and or examining witnesses. Thus, any requirement for the Plaintiff to have exhausted administrative remedies before filing this action are inapplicable and waived.

33. At all times mentioned herein, the transfer to the Bedford Hills prison facility was done to cover up the fact that she had been raped and sodomized and to prevent and impede a hearing and investigation into the violation of the plaintiff's rights under HIPPA, her denial of medical care and the manner in which she contracted Chlamydia which would have exposed the ongoing culture and custom at Albion permitting the rape along with the other sexual assault and harassment and retaliatory firing from her prison job that she suffered.

34. At all times mentioned herein, inmates such as the Plaintiff were required to undergo annual medical examinations. Prior to 2015, she never tested positive for any disease in the four previous years of her incarceration. Except for having been raped in prison as alleged herein, there was no other person with whom she had sexual relations while incarcerated. Upon information and belief, the disease was contracted due to the sexual encounters with Ross and or Cooper.

35. At all times mentioned herein and upon information and belief municipal official defendants exposed the Plaintiff to serious harm as they were deliberately

indifferent and subjectively aware of sufficiently serious risks of substantial harm to the Plaintiff's health and of sexual assault, retaliations and harassment the Plaintiff was caused to suffer.

36. Upon information and belief, defendants Annuci and Zenzen facilitated this harassment, rape and other recurrent sexual victimization by permitting supervisory officers such as Ross and Cooper and staff to operate in the manner alleged herein, by failing to monitor (through cameras or otherwise) known at-risk areas where the rapes and assaults took place, permitting male only on female supervision.

37. Annuci and Zenzen failed to protect women from retaliation for reporting rape and sexual abuse by correction officers, giving correction officers an actual and perceived free hand to retaliate against these women.

38. At all times mentioned herein and upon information and belief, despite being on notice of the widespread sexual misconduct perpetrated by correction officers at Albion, the defendants Annuci and Zenzen, Artus and Collins acted with deliberate indifference to the substantial risk of harm to Plaintiff and other women in its custody thereby denying the plaintiff due process and subjecting her to violation of her civil rights including risk of cruel and unusual punishment.

39. At all times mentioned herein and upon information and belief, Annuci and Zenzen permitted the assignment male correction officers to guard women at Albion without adequate safeguards to prevent rape and other recurrent sexual abuse acknowledged by the state and federal govenments.ie Male correction officers are assigned to posts in which they have unmonitored contact and complete discretion and control over incarcerated women.

40. At all times mentioned herein and upon information and belief, Annuci and Zenzen permitted corrections officers virtually unfettered access to unmonitored areas such as kitchen store rooms, storage closets, and pantries where they can rape and sexually abuse women with minimal risk of detection.

41. At all times mentioned herein and upon information and belief Annuci and Zenzen failed to ensure that security cameras are installed in these high risk areas and, where cameras are installed, has failed to ensure that they are functional.

42. At all times mentioned herein and upon information and belief, state defendants have failed to employ obvious measures to reduce the risk of rape and sexual abuse of incarcerated women by correction officers, such as heightened monitoring of behavior indicative of ongoing sexual abuse, appropriately placed and functional surveillance cameras installed and maintained without staff knowledge, exit interviews of incarcerated women upon transfer or release, random interviews of staff, and more frequent, unannounced rounds by supervisory officials.

43. At all relevant times, individual defendants and each of them are sued in their individual capacity under 42 USC 1983 in addition to violations for constitutional rights under the 8th and 14th amendments and under color of state law.

44. The actions of the defendants were outrageous.

45. At all times mentioned herein, defendants acted in furtherance of customs and de facto policies promulgated and designed to injure prisoners and deprive them of their rights and privileges under the Constitution including denial of medical attention and avoidance of grievance complaints.

46. As a result of the actions of the defendants and each of them, the Plaintiff has sustained physical and psychological injures .

47. No inmate has the legal capacity to consent to sexual relations with any official or employee of the corrections system.

48. New York State has recognized the coercive power correction officers and employees wield over incarcerated women, and the related risk of rape and other sexual abuse, by criminalizing all sexual activity between incarcerated individuals and correctional staff in New York Penal Law § 130.05(3)(f), New York Penal Law § 130.25(1), and New York Penal Law § 130.40(1) but it nonetheless permits a recurrent culture of systemic rape and other sexual abuse of women by correction officers to exist at Albion.

49. The reality of a recurrent culture of complacency for sexual victimization of female prisoners by prison staff was ( as well as male) prisoners was readily acknowledged by Congress in 2003 when 42 USC 15601 (Prison Rape Elimination Act.PREA) was enacted. Its intent was to end it and initiate programs and practices in the states to that end. In accord, New York State enacted its own scheme prohibiting as well ie. Penal Law 130 et seq. where an absolute prohibition against sexual contact /harassment between inmates and personnel was enacted. Additionally, the Department of Corrections and Community Supervision publishes reports on Sexual Vindication as well as issuing directives and memorandum concerning standards for behavior and duties for personnel to report any complaint so that an investigation may be undertaken. See DOCCS Memorandum 9/4/13, Directive 4028A and DOCCS Annual Report on Sexual Victimization 2015 and memo dated 1/24/14 of the U.S. Dept. of Justice Bureau of Justice Statistics 1/24/14. For the period 2009 -2011, The Dept. Of Justice found

that although women accounted for only 7% of sentenced prisoners, they represented 66% of victims of staff on inmate sexual assaults. In local jails, women represented 13% of inmates but 67% of victims.

50. During the relevant period of 2015, the aforesaid reports note that complaints of staff on inmate sexual assault or harassment increased by 13%. Reported assaults INCREASED from the period for 2014 (DOCCS annual report 2015). For the period 2009-2011, the Bureau of Justice Standards found that the most common location for staff on inmate "sexual victimization was in a program service area such as commissary, kitchen, storage area , laundry , cafeteria or workshop."

51. Reports of sexual abuse and harassment of inmates by staff at Albion is further described in records obtained by the Plaintiff in response to a Freedom Of Information Law(FOIL) request that were obtained subsequent to the preparation and filing of the First Amended Complaint . Said records note numerous instances of sexual assault, prohibited relationships or harassment directed to inmates at Albion by prison staff before, during and after the time that the Plaintiff was an inmate there .

52. At all times mentioned herein, the aforesaid findings by DOCCS and the Department of Justice and the FOIL records comprise data that supervisory personnel such as Zenzen and Anucci knew about. However, they failed to adequately supervise their staff and implement preventative measures in order to protect the Plaintiff's rights from violation so as to constitute a reckless disregard for the substantial likelihood her rights would be violated.

53. Despite knowledge of a culture of abuse and sexual harassment directed at inmates by prison staff, Defendant's either directly participated in the violation of the Plaintiff's ; or after being so advised of the violation through a report or appeal, failed to remedy the wrong, created a policy or custom under which unconstitutional practices occurred or allowed the continuance of such a policy or custom; were grossly negligent in supervising subordinates who committed the wrongful acts , or the defendant exhibited a deliberate indifference to the rights of inmates by failing to act on information indicating unconstitutional acts were occurring such as disciplining and supervising staff and permitting to work with and supervise female inmates and neglected to place surveillance cameras in areas known to serve as locations for sexual encounters.

## AS AND FOR A FIRST CAUSE OF ACTION
## DEPRIVATION OF FEDERAL CIVIL RIGHTS
## UNDER 42 U.S.C SECTION 1983-1989

54. Plaintiff repeats and re alleges each of the allegations contained in Paragraphs 1 through 53 with the same force and effect as if fully set forth herein.

55. That, all of the aforementioned acts of defendants, their agents, servants and/or employees, were carried out under the color of law.

56. That, all of the aforementioned acts of the defendants, their agents, servants and/or employees, deprived plaintiff of the rights, privileges and immunities guaranteed to citizens of the United States by the 8th and 14th Amendments to the Constitution of the United States of America, and in violation of 42 U.S.C. Section 1983-1988.

57. That, the actions of the defendants deprived plaintiff of due process under the Fourteenth Amendment to the Constitution of the United States of America and plaintiff's civil rights.

58. That, the actions of the defendants constituted cruel and unusual punishment in violation of the 8th Amendment to the Constitution of the United States of America and plaintiff's civil rights.

59. That, the actions of the defendants deprived plaintiff of equal protection in violation of the 14th Amendment to the Constitution of the United States of America and plaintiff's civil rights.

60. That, the acts complained of were carried out by the aforementioned defendants in their capacities as corrections staff, with all the actual and/or apparent authority attendant thereto.

61. That, the acts complained of were carried out by the aforementioned defendants in their personal capacities pursuant to the customs, usages, practices, enabling a culture of recurrent sexual victimization against female inmates by male prison staff in accord with the de facto procedures, and rules of conduct of the State of New York, the New York State corrections system, the New York State Department Of Corrections and Community Supervision, and the Albion Correctional Facility.

62. Defendants, engaged in conduct which is forbidden by the Constitution of the United States.

63. That, as a result of the foregoing, plaintiff sustained, *inter alia*, rape, sodomy, sexual abuse, sexually transmitted disease, intimidation, retaliation, emotional distress, personal, psychological and bodily injuries, mental anguish, shock, fright,

apprehension, severe humiliation and embarrassment, damage to reputation and occupation, and deprivation of Civil and Constitutional Rights.

64. That, the foregoing was due to the willfulness, unlawfulness, gross negligence, deliberate indifference to serious medical need of the Plaintiff by the defendants for the risk of injury to the Plaintiff or violation of her rights.

65. As a result of the foregoing, plaintiff is entitled to compensatory damages in the sum of FIVE MILLION ($5,000,000.00) DOLLARS against defendants, individually and collectively.

66. Punitive damages against the defendants are also sought as the actions of the defendants demonstrate reckless indifference to her rights, ill will and or malice.

67. Plaintiff demands trial by jury.

PRAYER FOR RELIEF WHEREFORE, Plaintiffs respectfully request the following relief: compensatory damages in amounts to be determined at trial; the costs of this action, including reasonable attorneys' fees; Such further relief as this Court deems just and proper.

Dated: New York, New York
October 18, 2018

JAY H. TANENBAUM, ESQ. (514531)
ATTORNEY FOR PLAINTIFF
14 WALL STREET, SUITE 5F

NEW YORK, NY 10005
212-422-1765
JAYWALL555@AOL.COM