```
UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
```

CHIWANA CRANDELL,

                                Plaintiff,

                                                    Case # 19-cv-6552

v.

                                                    DECISION AND ORDER

KEVIN ROSS, et al.,

                                Defendants.

## INTRODUCTION

Plaintiff Chiwana Crandell ("Plaintiff") brings this action pursuant to 42 U.S.C. § 1983, alleging that Department of Corrections and Community Supervision ("DOCCS") employees Kevin Ross and Gary Cooper, DOCCS Acting Commissioner Anthony J. Annucci, Albion Correctional Facility Superintendent Sheryl Zenzen, DOCCS supervisors Duante Artus and Leigh Collins, and John Does 1-10 violated her rights to due process and equal protection under the Fourteenth Amendment and her right to be free from cruel and unusual punishment under the Eighth Amendment. ECF No. 38.

Defendants Annucci, Zenzen, Artus, and Collins (hereinafter "Defendants")[1] now move to dismiss the Second Amended Complaint[2] for failure to state a claim pursuant to Federal Rule of Procedure ("Rule") 12(b)(6). ECF No. 47. The United States District Court for the Northern District of New York transferred the case to this Court and declined to reach the merits of the

---

[1] Defendants Kevin Ross and Gary Cooper are not represented by the New York State Attorney General's Office and do not move to dismiss the Second Amended Complaint.

[2] Defendants moved to dismiss the original complaint and the parties stipulated to the filing of an amended complaint. ECF No. 21. Defendants moved to dismiss the amended complaint, and Plaintiff made a letter request to amend. The Court allowed Plaintiff to amend again, resulting in the Second Amended Complaint. The motion to dismiss currently before the Court raises many of the same arguments Defendants presented in their first two motions to dismiss.

motion to dismiss. ECF No. 60. For the reasons that follow, the Court GRANTS Defendants' motion to dismiss.

## BACKGROUND[3]

Between 2011 and August 2015, Plaintiff was an inmate at New York State Albion Women's Correctional Facility ("Albion"). ECF No. 38 ¶ 16. In early 2015, Plaintiff learned that she may be eligible for "early release" in September 2015, instead of September 2016. *Id.* ¶ 25.

At some point in 2015, Plaintiff "was assigned to a prison job" where Cooper—"a civilian non uniformed employee"—and Ross—a uniformed corrections officer—supervised inmates, including Plaintiff. *Id.* ¶¶ 4-5, 24. From March to July 2015, Cooper and Ross forced Plaintiff to go to secluded areas in Albion without surveillance and "repeatedly sexually harassed, raped and assaulted" her. *Id.* ¶ 17-23. She "was blackmailed, harassed, and terrorized into engaging in sex acts" with Cooper and Ross, who claimed that they could "see to it that she would receive early release in exchange for sex." *Id.* ¶¶ 16, 26. They threatened that, "unless she went along and kept quiet about it," they would "sabotage her hearing" to ensure that she did not obtain early release. *Id.* ¶ 26. Cooper and Ross also warned that even if Plaintiff received an early release, they would "see to it that the early release would be revoked if she ever reported or otherwise complained about it." *Id.*

In May 2015, after the abuse had begun, "Plaintiff made repeated requests to see a gynecologist as she was not feeling well." *Id.* ¶ 29. Her requests were denied, she was "compelled to file a written grievance," and a hearing was set for August 25, 2015. *Id.*

---

[3] The following facts are taken from the Second Amended Complaint and the Court accepts them as true for purposes of this motion.

2

In June 2015, Plaintiff was notified that her request for early release was granted. *Id.* ¶ 27. Shortly thereafter, Cooper "caused the Plaintiff to be fired from her prison job when she finally refused to have sex with him again." *Id.*

Plaintiff reported the assaults to Artus, the deputy of administration at Albion, and Collins, a "ranking corrections officer." *Id.* ¶¶ 9-10, 20, 28. Artus and Collins "intimidated and threatened" retaliation against Plaintiff, stating that it would be "best for her if she did not complain about it." *Id.* ¶ 28. Artus warned Plaintiff "that she was putting her early release in jeopardy by complaining," while Collins "began to chant 'SHU' to intimidate Plaintiff by referring to special housing unit as a disciplinary measure for even mentioning what happened to her." *Id.* ¶ 20.

At some point in August 2015, Plaintiff was examined by a gynecologist, who diagnosed chlamydia. *Id.* ¶ 30. Plaintiff alleges that she had never tested positive for any disease during her incarceration, nor had she had any sexual relations while in prison, except with Cooper and Ross. *Id.* ¶ 34. Thereafter, Plaintiff's medical records—including her chlamydia diagnosis—were circulated in the prison as an apparent "campaign of intimidation and retaliation against her." *Id.* ¶ 31. Plaintiff filed a grievance regarding the publication of her medical information and a hearing was set for August 25, 2015. *Id.*

The hearing never occurred because on August 24, 2015, Plaintiff "was abruptly and summarily transferred to Bedford Hills Correctional Facility, where she remained until her release from prison on September 3, 2015." *Id.* ¶ 32.

Plaintiff alleges that Annucci and Zenzen "facilitated th[e] harassment, rape and other recurrent sexual victimization by permitting supervisory officers such as Ross and Cooper to operate" as they did "by failing to monitor (through cameras or otherwise) known at-risk areas where the rapes and assaults took place," and by "permitting male only on [sic] female

supervision." *Id.* ¶ 36. Further, Plaintiff claims that Annucci and Zenzen "failed to employ obvious measures to reduce the risk of rape and sexual abuse of incarcerated women by corrections officers," despite knowing of the risk. *Id.* ¶¶ 39, 42.

## DISCUSSION

At the outset, the Court recognizes that it is exceedingly difficult to parse out what claims Plaintiff is trying to bring and against whom she is trying to bring them. She often makes sweeping, conclusory assertions of conduct by "Defendants," without any factual basis to infer that all Defendants participated in such conduct. Aside from identifying claims for denial of due process and equal protection and for cruel and unusual punishment, Plaintiff does not specify which claims or legal theories apply to which Defendants. The only guidance comes from the parties' moving and response papers, from which the Court is reluctant to read claims not contained in the Second Amended Complaint. *See Mosby v. Bd. of Educ. City of Norwalk*, 754 F. App'x 34, 37 (2d Cir. 2018) (summary order) ("[T]o the extent that Mosby seeks to pursue retaliation claims that were not part of his original complaint . . . the district court properly refused to entertain such arguments because Mosby neither asserted those claims in a proper amended pleading nor moved for leave to file an amended complaint that would raise them or augment his existing claim. Instead, Mosby first raised these new claims in his opposition to the Board's motion for summary judgment."). Nevertheless, the Court will analyze each Defendant separately to determine whether the allegations contained in the Second Amended Complaint state a claim for violation of Plaintiff's due process, equal protection, or Eighth Amendment rights.

I. **Legal Standard**

In deciding a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a court "must accept as true all of the factual allegations contained in the complaint," *Bell Atl. Corp. v.*

*Twombly*, 550 U.S. 544, 572 (2007) (quoting another source), and "draw all reasonable inferences in Plaintiff's favor." *Faber v. Metro. Life Ins. Co.*, 648 F.3d 98, 104 (2d Cir. 2011). To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The application of this standard is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679.

"To state a valid claim under 42 U.S.C. § 1983, the plaintiff must allege that the challenged conduct (1) was attributable to a person acting under color of state law, and (2) deprived the plaintiff of a right, privilege, or immunity secured by the Constitution or laws of the United States." *Whalen v. Cnty. of Fulton*, 126 F.3d 400, 405 (2d Cir. 1997) (citing *Eagleston v. Guido*, 41 F.3d 865, 875-76 (2d Cir. 1994)). "Section 1983 itself creates no substantive rights; it provides only a procedure for redress for the deprivation of rights established elsewhere." *Sykes v. James*, 13 F.3d 515, 519 (2d Cir. 1993) (citing *City of Oklahoma City v. Tuttle*, 471 U.S. 808, 816 (1985)).

Plaintiff admits that Defendants are sued in their individual capacities. ECF No. 58 at 17. To establish liability against an official under § 1983, a plaintiff must allege that individual's personal involvement in the alleged constitutional violation; it is not enough to assert that the defendant is a link in the chain of command. *See McKenna v. Wright*, 386 F.3d 432, 437 (2d Cir. 2004); *Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir. 1995). Moreover, the theory of *respondeat superior* is not available in a § 1983 action. *See Hernandez v. Keane*, 341 F.3d 137, 144 (2d Cir. 2003). But a supervisory official can be found to be personally involved in an alleged constitutional violation in one of several ways, described more fully below. *See Turkmen v. Hasty*,

789 F.3d 218, 250 (2d Cir. 2015) *rev'd in part and vacated in part on other grounds sub nom. Ziglar v. Abbasi*, 137 S.Ct. 1843 (2017); *Colon*, 58 F.3d at 873.

**II.     Artus and Collins**

Plaintiff's legal claims against corrections officers Artus and Collins are not entirely clear, but they seem to boil down to this: upon learning of Plaintiff's alleged sexual abuse, Artus and Collins harassed and threatened Plaintiff, and failed to report her allegations to superiors. ECF No. 38 ¶ 20. It is unclear whether Plaintiff attempts to make out a due process or Eighth Amendment claim. Either way, Plaintiff's claims against Artus and Collins fail for lack of personal involvement in a constitutional deprivation.

Plaintiff's claims that Artus and Collins harassed and threatened[4] her do not amount to a constitutional violation. Notably, Plaintiff does not attempt to make out a First Amendment claim for retaliation. Rather, she appears to allege that the behavior of Artus and Collins amounts to some sort of due process violation or cruel and unusual punishment. But "[i]t is well settled law in this Circuit that 42 U.S.C. § 1983 is not designed to rectify harassment or verbal abuse." *Carl v. Dirie*, No. 09-CV-724 (GTS/RFT), 2010 WL 3338566, at *7 (N.D.N.Y. Mar. 29, 2010) (quoting another source). "[V]erbal harassment or profanity alone, unaccompanied by an injury no matter how inappropriate, unprofessional, or reprehensible it might seem, does not constitute the violation of any federally protected right and therefore is not actionable under 42 U.S.C. § 1983." *Moncrieffe v. Witbeck*, No. 97-CV-253, 2000 WL 949457, at *3 (N.D.N.Y. June 29, 2000) (quoting another source); *see Burroughs v. Petrone*, 138 F. Supp. 3d 182, 204 (N.D.N.Y. 2015) (collecting cases); *Tafari v. McCarthy*, 714 F. Supp. 2d 317, 364 (N.D.N.Y. 2010) ("[V]erbal harassment itself does not rise to the level of a constitutional violation[,]" and "verbal abuse,

---

[4] Although the Second Amended Complaint states that Plaintiff's medical records were widely disseminated, she makes no factual allegation that Artus or Collins were to blame.

6

vulgarity, and even threats are insufficient to rise to the level of constitutional violations." (quoting another source)). Moreover, "threats do not amount to violations of constitutional rights." *Moncrieffe*, 2000 WL 949457, at *3 (quoting another source). Therefore, Artus and Collins's alleged threats to Plaintiff, alone, do not violate Plaintiff's constitutional rights.

Neither does Artus and Collins's alleged failure to report or intervene in the alleged abuse.[5] "It is widely recognized that all law enforcement officials have an affirmative duty to intervene to protect the constitutional rights of citizens from infringement by other law enforcement officers in their presence." *Allen v. City of New York*, 480 F. Supp. 2d 689, 694 (S.D.N.Y. 2007) (quoting another source). To state a claim against a corrections officer for his or her failure to intervene, a plaintiff must allege facts demonstrating that "(1) the officer had a realistic opportunity to intervene and prevent the harm; (2) [the officer knew] that the victim's constitutional rights were being violated; and (3) the officer [did] not take reasonable steps to intervene." *Jean–Laurent v. Wilkinson*, 540 F. Supp. 2d 501, 512 (S.D.N.Y. 2008).

The problem is that Plaintiff reported the abuse in August 2015—one month *after* the abuse ended in July 2015. *See Jordan v. Fischer*, 773 F. Supp. 2d 255, 278 (N.D.N.Y. 2011) ("In the case of an alleged assault, finding out about the assault after the fact does not render DSS Racette liable for the constitutional violation."); *Harnett v. Barr*, 538 F. Supp. 2d 511, 524 (N.D.N.Y. 2008) ("If the official is confronted with a violation that has already occurred and is not ongoing, then the official will not be found personally responsible for failing to 'remedy' a violation."). In other words, by Plaintiff's own admission, the abuse was not ongoing at the time Plaintiff reported it to Artus and Collins, and thus, there was no longer an opportunity to prevent or remedy the harm. Undoubtedly, Plaintiff's allegations of Artus and Collins's behavior, if true, are unacceptable, but

---

[5] To the extent Plaintiff seeks to hold Artus and Collins liable on a theory of supervisory liability, the claim fails for the same reasons.

7

they are not unconstitutional in the absence of Plaintiff articulating a wrong Artus or Collins could have remedied.

To the extent Plaintiff attempts to assert a claim that Artus or Collins were indifferent to her medical need, such a claim also fails. "To establish an Eighth Amendment violation based on inadequate medical care, a prisoner must demonstrate both an objectively serious medical deprivation and subjective deliberate indifference on the part of the charged official." *Alvarez v. Wright*, No. 18-274-PR, 2019 WL 6903973, at *2 (2d Cir. Dec. 18, 2019). The objective component "contemplates a condition of urgency such as one that may produce death, degeneration, or extreme pain." *Charles v. Orange Cnty.*, 925 F.3d 73, 86 (2d Cir. 2019). For the subjective component, the plaintiff must show that the defendant had "a state of mind that is the equivalent of criminal recklessness." *Hathaway v. Coughlin*, 99 F.3d 550, 553 (2d Cir. 1996). "As a general matter, non-medical personnel may be liable for deliberate indifference to medical needs where a plaintiff demonstrates that such personnel intentionally denied or delayed access to medical care." *Starling v. Syracuse Police Dep't*, No. 519CV1458DNHTWD, 2019 WL 6974731, at *5 (N.D.N.Y. Dec. 20, 2019).

Plaintiff does not meet either prong. Rather, she conclusorily states that beginning in May 2015 she "made repeated requests to see a gynecologist as she was not feeling well." ECF No. 38 ¶ 29. Plaintiff does not allege that she had an objectively serious medical need at the time she complained, nor does she allege that she communicated any such medical need to Artus or Collins. It follows that Plaintiff has not pled that Artus or Collins had a sufficiently culpable state of mind in delaying her access to medical care.

**III. Annucci and Zenzen**

Plaintiff alleges that supervisors Annucci and Zenzen created a culture where sexual abuse could thrive and did nothing to prevent or remedy such abuse, despite knowing of it. Specifically, Plaintiff claims that Annucci—acting superintendent of DOCCS—and Zenzen—superintendent at Albion—"facilitated . . . harassment, rape and other recurrent sexual victimization by permitting supervisory officers such as Ross and Cooper" by (1) "failing to monitor (through cameras or otherwise) known at-risk areas where the rapes and assaults took place," ECF No. 28 ¶¶ 36, 40-41; (2) failing "to protect women from retaliation for reporting rape and sexual abuse by corrections officers, giving correction officers an actual and perceived free hand to retaliate against these women," *id.* ¶ 37; (3) acting "with deliberate indifference to the substantial risk of harm to Plaintiff and other women in its custody thereby denying the plaintiff due process and subjecting her to" cruel and unusual punishment, *id.* ¶ 38; (4) permitting "the assignment of male correction officers to guard women at Albion without adequate safeguards to prevent rape and other recurrent sexual abuse," *id.* ¶ 39; and (5) failing "to employ obvious measures to reduce the risk of rape and sexual abuse of incarcerated women by corrections officers," *id.* ¶ 42. Plaintiff supports these allegations by referring to DOCCS directives and United States Department of Justice reports on sexual abuse in female prisons. *See id.* ¶ 49. Yet Plaintiff does not explain details contained in the reports, nor does she attach the reports to the amended complaint. She does, however, note that the reports indicate that "staff on inmate sexual assault or harassment" increased over the past several years. *Id.* ¶ 50. At bottom, Plaintiff seems to be arguing that supervisory liability should attach because Annucci and Zenzen perpetuated customs or practices that allowed sexual abuse to flourish at Albion and that Annucci and Zenzen were deliberately indifferent to sexual abuse at Albion.

The Court disagrees. To establish supervisory liability for failure to protect, a plaintiff must establish facts that show that

> (1) the defendant participated directly in the alleged constitutional violation, (2) the defendant, after being informed of the violation through a report or appeal, failed to remedy the wrong, (3) the defendant created a policy or custom under which unconstitutional practices occurred, or allowed the continuance of such a policy or custom, (4) the defendant was grossly negligent in supervising subordinates who committed the wrongful acts, or (5) the defendant exhibited deliberate indifference to the rights of inmates by failing to act on information indicating that unconstitutional acts were occurring.

*Colon*, 58 F.3d at 873 (citing *Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994)). However, a claim for supervisory liability can only survive a motion to dismiss if a plaintiff plausibly alleges facts that a defendant supervisor's *own actions* violated the constitution. *See Turkmen*, 789 F.3d at 250.

Plaintiff has not alleged that Annucci or Zenzen participated directly in the constitutional violation or that they were ever aware of Plaintiff's sexual abuse at a time they could remedy it. But "[e]ven where a plaintiff does not allege any facts suggesting that prison officials were aware of a particular risk to his or her safety, the 'plaintiff may also state a claim for deliberate indifference based on a failure to protect [her] against a general risk of harm to all inmates at the facility.'" *Stephens v. Venettozzi*, No. 13-CV-5779 (RA) (DF), 2016 WL 929268, at *21 (S.D.N.Y. Feb. 24, 2016) (quoting another source), *report and recommendation adopted sub nom. Stephens v. Venetozzi*, No. 13 CIV. 5779 (RA), 2016 WL 1047388 (S.D.N.Y. Mar. 10, 2016). To do so, however, Plaintiff must allege Defendants "knew of a history" of conduct "similar to that suffered by the plaintiff and that measures they should have taken to prevent the reoccurrence of such attacks would have prevented the harm to the plaintiff." *Id.* A claim based on generalized risk of assault, as here, requires facts demonstrating "longstanding, pervasive, well-documented history of similar attacks, coupled with circumstances suggest[ing] that the defendant-official being sued

had been exposed to [this] information." *Hicks v. Woods*, No. 9:09cv0051 (GLS)(DRH), 2011 WL 5974973, at *3 (N.D.N.Y. Nov. 28, 2011) (quoting another source).

Here, Plaintiff has not pled facts establishing that there was a widespread, longstanding occurrence of sexual abuse of female prisoners at Albion, that Defendants knew about any such widespread abuse, or that they failed to do anything about it. Simply stating, as Plaintiff does, that sexual abuse occurred or was increasing in prevalence in undisclosed federal and state prisons is not the same as a widespread custom or policy of deliberate indifference to sexual assault at Albion. These general assertions[6] do not amount to a practice of indifference to sexual abuse so widespread as to be considered a custom. *See Smith v. Martuscello*, 602 F. App'x 550, 552 (2d Cir. 2015) ("Though Smith's amended complaint contains allegations of widespread abuse in the prison system, and at Coxsackie in particular, it contains no allegations that the abuse was the result of a policy or custom of deliberate indifference to inmate abuse."); *see also White v. City of New York*, 206 F. Supp. 3d 920, 938 (S.D.N.Y. 2016) (plaintiff failed to state a claim of a widespread custom of police abusing transgender people when plaintiff only pointed to general reports of police brutality and excessive force).

To the extent Plaintiff attempts to assert a failure to supervise claim, such a claim must also fails because Plaintiff's Second Amended Complaint "lacks any hint" that Annucci or Zenzen "acted with deliberate indifference to the possibility that their subordinates would violate

---

[6] The only remotely specific allegation in the Second Amended Complaint is that "records obtained by Plaintiff" in response to a FOIL request "note numerous instances of sexual assault, prohibited relationships or harassment directed at Albion by prison staff before, during and after the time that the Plaintiff was an inmate there." ECF No. 38 ¶ 51. Without elaboration, this general, vague language hinting at "numerous" assaults is insufficient to demonstrate that Annucci or Zenzen perpetuated a pervasive sexual assault or a custom of indifference to it. *See Little v. Mun. Corp.*, 51 F. Supp. 3d 473, 487 (S.D.N.Y. 2014) ("The Amended Complaint catalogues a number of incidents that Plaintiffs understandably find objectionable, but it does not explicitly identify a policy, custom, or practice promulgated by the City or Commissioner Schiro that would form the basis for a valid claim.").

[Plaintiff's] constitutional rights." *Accord Holland v. City of New York*, 197 F. Supp. 3d 529, 551 (S.D.N.Y. 2016).

## IV. Other Claims

Plaintiff vaguely mentions a possible due process claim for denial of grievance procedures and an equal protection claim, but does not link either claim to a specific defendant or group of Defendants. With respect to the due process claim, Defendants argue that their conduct does not amount to a denial of Plaintiff's grievance procedures. Plaintiff does not appear to allege that she had a right to a specific grievance procedure or that Defendants violated such a right. In any event, Plaintiff does *not* have such a right to a grievance procedure under the due process clause of the Fourteenth Amendment. *Pine v. Seally*, No. 09-CV-1198, 2011 WL 856426, at *8 (N.D.N.Y. Feb. 4, 2011) ("[T]he law is well-settled that inmates do not have a constitutional right to grievance procedures. . . . Furthermore, a violation of the inmate grievance procedures does not give rise to a claim under section 1983."). Plaintiff also seems to suggest some nebulous "protected liberty interest and subsequent procedural right" relating to her transfer that arose from a combination of various other constitutional violations. ECF No. 58 at 28-29. Again, there is no support for this contention. *See Montanye v. Haymes*, 427 U.S. 236 (1976) (noting that DOCCS is empowered to transfer inmates).

Nor has Plaintiff stated a claim for a violation of her Equal Protection rights. A State and its instrumentalities may not deny "any person within its jurisdiction the equal protection of the laws." U.S. Const. Amend. XIV. At its core, equal protection prohibits the government from treating similarly situated persons differently. *See City of Cleburne v. Cleburne Living Center*, 473 U.S. 432, 439 (1985); *Sound Aircraft Services, Inc. v. Town of East Hampton*, 192 F.3d 329,

335 (2d Cir. 1999). Plaintiff has not alleged that she was treated differently than other inmates similarly situated.

Finally, although Defendants have not argued for their dismissal, Plaintiff has made no factual claim that any John Doe 1-10 committed any unconstitutional act. Nor does it appear Plaintiff served any John Doe. Consequently, John Does 1-10 will also be dismissed. *Muka v. Murphy*, 358 F. App'x 239, 241 (2d Cir. 2009) ("A district court's ability *sua sponte* to dismiss a complaint that lacks a basis in law or fact is well-established.").

## CONCLUSION

For the reasons stated above, Annuci, Zenzen, Artus and, and Collins's motion to dismiss (ECF No. 47) is GRANTED. The claims in the Second Amended Complaint against Defendants Annucci, Zenzen, Artus, Collins, and John Does 1-10 are DISMISSED WITH PREJUDICE. The Clerk of Court shall terminate them as defendants in this action. The case may proceed only with respect to Defendants Ross and Cooper.

IT IS SO ORDERED.

Dated: January 13, 2020
Rochester, New York

HON. FRANK P. GERACI, JR.
Chief Judge
United States District Court